530

The MUMFORD COVE ASSOCIATION, INC.; Haley Farms Estates, Inc.; Marion Ackerman, Cheryl M. Barrett, Peter J. Bartinik, Marianne Bartinik, Catherine Belair, Wayne Berge, Robert G. Boggs, Phyllis Boggs, Arthur S. Booth, Ellen L. Booth, Kathleen F. Bragaw, Louis K. Bragaw, Henry L. Braly, Mary S. Braly, Harriett Brown, Malcolm Brown, Muriel W. Buckley, William C. Byrnes, Harriet M. Caramella, Severn S. Carlson, Hugh D. Casey, Henry J. Chamberlain, Mary M. Chamberlain, William S. Clark, John J. Condron, Marguerite Condron, David M. Cote, Marchia B. Cote, David P. Dean, David L. Deibel, Ruth W. Delap, James Duffy, Edythe Duffy, Henry F. Durham, Gail C. Eddy, David F. Falvey, Esq., H. Patricia Falvey, Eleanor G. Feinberg, Glen S. Feinberg, Linda R. Feinberg, Gregory E. Gardiner, Linda J. Gardiner, Harry D. Gault, Jr., Ralph M. Gifford, Judith N. Gifford, John M. Gray, III, Kenneth Grube, George Guertin, M. Madeline Guertin, Joseph Hanzel, Joann B. Harrington, John Hewes, Dorothy Hoyt, Paul C. Huber, Dorothy A. Huber, Helene Lavigueur, Angelo C. Lazaros, Marilyn Leonard, Wallace MacPeek, Jean F. Mazzella, Miriam Morgan, Wayne N. Muller, Rosalie Muller, Jack Muratore, Ralph Olesen, Gale Olesen, Edward Oliveira, Helen Oliveira, Arthur G. Olson, Rita M. Pease, Salvatore Pennella, Sandra Pennella, John A. Pescatello, Harold M. Pingree, Jr., Joyce O. Regan, Ward M. Ritchey, J. Louise Roberts, Malcolm J. Robertson, Margaret Robertson, William Seibert, Arthur J. Shaw, III, Marie Shaw, Jeremiah Shea, Herman E. Sheets, Earl W. Smith, Ruth E. Stocker, Warren C. Stocker, Helen H. Stockwell, Colleen Ann Sullivan, Howard R. Swenson, Alfred W. Thatcher, Eleanor V. Walker, George J. Walker, Joseph Warner, Ernest H. Treff, Dorthea Warner, Dorothy Windhorst, David H. Swenson, Laura Swenson, Plaintiffs-Appellees,

Stanley J. Pac, Commissioner of Environmental Protection, Plaintiff-Intervenor,

v.

The TOWN OF GROTON, CONNECTICUT, Defendant,

The City of Groton and the City of New London, Appellants.

No. 187, Docket 85-7438.

United States Court of Appeals, Second Circuit.

Argued Oct. 30, 1985.

Decided March 20, 1986.

Kathleen Eldergill, Manchester, Conn. (Beck & Eldergill, Manchester, Conn., of counsel), for appellants.

Mark R. Sussman, Hartford, Conn. (Russell L. Brenneman, R. Bradford Fawley, Murtha, Cullina, Richter and Pinney, Hartford, Conn., of counsel), for plaintiffs-appellees.

Richard F. Webb, Asst. Atty. Gen., Hartford, Conn. (Joseph I. Lieberman, Atty. Gen., State of Conn., Hartford, Conn., of counsel), for plaintiff-intervenor.

Before MANSFIELD, MESKILL, and CARDAMONE, Circuit Judges.

CARDAMONE, Circuit Judge:

Two Connecticut cities seek to inject themselves into a federal suit brought against a Connecticut town to compel its compliance with an order requiring the town to shift the site of sewage discharge. At the root of the cities' motion to intervene are several concerns. Foremost is that enforcement of the order would result in pollution of the Thames River that flows between the two cities. Also significant is the related costly burden of constructing the necessary outfall. Nevertheless, neither concern furnishes grounds to intervene. First, since the Order that contemplates discharge into the Thames River is final its terms are no longer subject to challenge under Connecticut law. Further, because the cities take issue with the Order's terms rather than its enforceability, their claimed grounds for intervening do not relate to the subject matter of the federal enforcement suit.

Second, all that can be accomplished at this late date is postponement of the inevitable. Congress has concluded that the purity and usefulness of our waters may not be measured in dollars and cents alone. Fueling the national effort to cleanse them is money raised by taxes which, no matter how devised, are never convenient or acceptable. Yet, so long as similar burdens are impartially imposed on other municipalities these cities may not complain that the "rules of justice" have been trampled upon. *The Federalist* No. 10, at 57 (J. Madison) (Sesquicentennial ed. 1937). Consequently, we affirm the order denying the motion to intervene.

# I BACKGROUND

## A. *Facts*

Plaintiffs, the Mumford Cove Association, Inc., a non-profit corporation of property owners, and its individual members, brought an action under the citizen's suit-provisions of the Clean Water Act, 33 U.S.C. § 1365 (1982) (the Act) against the Town of Groton, Connecticut (Town), where the individual plaintiffs reside. The Commissioner of the Department of Environmental Protection of the State of Connecticut (DEP) successfully moved to intervene as a plaintiff pursuant to Fed.R.Civ.P. Rule 24(a) and (b). The Mumford Cove Association and its individual members own property immediately adjacent to Mumford Cove, a shallow estuarine tidal basin in Groton connecting to Fisher's Island Sound, which is a part of Long Island Sound. Mumford Cove is a navigable water of the United States subject to protection under the Clean Water Act.

For more than a decade the Town of Groton's sewage treatment plant has been discharging effluent into Fort Hill Brook, upstream from Mumford Cove. The sewage plant began operating in 1974, replacing a smaller facility, and its discharge has changed Mumford Cove from a tidal saltwater embayment, abounding in diverse plant and animal life and fit for human use, into a brackish water choked by a monoculture of algae excluding beneficial aquatic plant life.

In 1971 the DEP issued Order No. 964 requiring the Town to cease discharging its treated sewage into Mumford Cove and to construct an outfall pipeline to serve the expanded sewage treatment plant, scheduled to begin operations in 1974. Following issuance of the 1971 Order, the Town evaluated various outfall alternatives and on the basis of an expert's report the DEP modified Order No. 964, directing the construction of an outfall that would result in a discharge to the navigation channel of the Thames River. The diversion plan specified in the state permit requires construction of a pipeline through a portion of the City of Groton. The Town of Groton objected to the modified order and requested an administrative hearing in which the City of Groton joined. On the basis of extensive testimony and numerous exhibits the hearing officer approved, and the Commissioner of DEP affirmed, Order No. 964 modified directing the outfall to the Thames River. Accordingly, the DEP issued its Final Determination Order No. 964 Modified on September 27, 1976. No appeal was taken from this final determination.

On November 30, 1984 plaintiffs instituted the instant action against the Town. The complaint consists of five counts. Counts one and two charge that the Town violated both its federal discharge permit and Order No. 964 issued pursuant to the Act, in that it has failed to construct the Thames River outfall. The remaining three counts assert pendent state nuisance and negligence causes of action. Leave to intervene was granted the DEP on January 30, 1985. On February 20, 1985 the Cities of Groton and New London (the Cities) simultaneously filed a motion for leave to intervene as defendants under Rule 24(a) and (b) and moved to dismiss plaintiffs' complaint on the grounds that enforcement of Order No. 964 was not ripe. The City of New London is located along the west bank of the Thames River across the river from the City and Town of Groton, both situated on the east bank of the Thames River. New London discharges its sewage effluent into the Thames River. The Cities' motion to intervene was denied by the United States District Court for the District of Connecticut (Cabranes, J.) in an oral decision on April 29, 1985. It is from that denial that the Cities appeal.

## B. *The District Court's Decision*

The district court's decision identified the Cities' interests as rising from their status as intervenors in the state proceeding and their asserted rights to participate in the instant matter pursuant to federal regulations concerning the awarding and distribution of construction grants. The court considered the issue between plaintiffs and the

Town as one of "enforcement of a state discharge permit" issued pursuant to the Act. The district judge further noted that any person may participate in state administrative proceedings regarding a state discharge permit under the terms of Connecticut's broadly permissive intervention statute. Conn.Gen.Stat. § 22a–19. But it held that the Cities did not have the "requisite significantly protectable interest in the subject of this litigation that would justify intervention in this federal lawsuit."

The district court affirmed the finality of the DEP administrative proceeding that resulted in Order No. 964 and held that the permit's effluent diversion provisions were not at issue in this federal proceeding. After denying intervention of right under Fed.R.Civ.P. 24(a)(2), it agreed with plaintiffs that intervention by the Cities would likely "unduly delay or prejudice the adjudication of the rights of the original parties" and also denied permissive intervention under Fed.R.Civ.P. 24(b)(2). The district court granted appellants *amici curiae* status on May 21, 1985. From the time the Cities' motion to intervene was denied, they have been served with copies of all papers filed in the district court.

## II  DISCUSSION

Appellants urge that the trial court wrongly denied intervention because it concluded they had no interest in the subject matter of the underlying action and because their interests were represented by the State DEP. The Cities assert that they have an interest, not only in the funding of the proposed Thames River Outfall, but also in the enforcement of Order No. 964. Because that Order requires consideration of construction alternatives as part of the mandated environmental assessment, the Cities argue that it is not a "final order enforceable by a federal court." Rather, it is the subject of an ongoing administrative process. Further, since the specific alternatives sought by plaintiffs would result in the construction of a sewer outfall through the City of Groton that would dump sewage into the Thames River bordering both

Cities, and just north of the City of Groton's public beach, both Cities claim they have a significantly protectible interest in the subject of this litigation, one that neither the DEP nor the Town of Groton adequately represents.

Appellant Cities first urge that they were entitled to intervene as of right under Fed.R.Civ.P. 24(a)(2), which provides:

(a) Invervention of Right. Upon timely application anyone shall be permitted to intervene in an action: ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

And, they further urge, if their first argument fails, they were entitled to permissive intervention under Rule 24(b)(2) which states:

(b) Permissive Intervention. Upon timely application anyone may be permitted to intervene in an action: ... (2) when an applicant's claim or defense and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

We consider these arguments in turn.

### A.  *Intervention of Right*

There are two hurdles appellants must surmount. First, they are required to demonstrate an interest in the subject matter of the action and, second, that the State DEP is not adequately representing that interest. *See, e.g., United States Postal Service v. Brennan,* 579 F.2d 188, 191 (2d Cir.1978).

To meet the first test, appellants urge that Order 964 is not a final order directing the construction of the Thames River outfall, that consideration of alternatives to that outfall is still underway, and that a

definite alternative selection is still possible.

When Congress in 1972 enacted the Clean Water Act, 33 U.S.C. § 1251 *et seq.,* it envisioned that individual states might assume primary responsibility for pollution abatement within their borders, 33 U.S.C. § 1342(b). Congress also recognized the independent right of each state to administer its own pollution elimination system, see *Mianus River Pres. Com. v. Adm'r Envir. Prot. Agency,* 541 F.2d 899, 905 (2d Cir.1976), providing that the state's program has been approved by the Administrator of the United States Environmental Protection Agency (EPA). *Accord Shell Oil Co. v. Train,* 585 F.2d 408, 410 (9th Cir.1978) ("Congress clearly intended that the states would eventually assume the major role in the operation of the [National Pollutant Discharge Elimination System] NPDES program."). In 1973 Connecticut's antipollution plan secured such approval under § 1342(b), and thereafter the responsibility for issuing permits was transferred from federal hands to the Connecticut DEP. Thus, the DEP issued Order No. 964 against the Town of Groton under Connecticut law which authorizes such an Order. Conn.Gen.Stat. § 22a–428. The Order was issued after full compliance with administrative procedures in which the Town and City of Groton participated. Although the City of New London had a right to become a party to this proceeding, Conn.Gen.Stat. § 22a–19, it chose not to exercise this option. Permitted state court review from the order, Conn.Gen.Stat. § 22a–437(a), was not taken by either the City or the Town of Groton.

We agree with the district court that Order No. 964 is final and therefore no longer subject to challenge. The cities no longer have a "protectible interest" requiring intervention in this federal enforcement action because their time to challenge the Order has long since expired. They argue that the Order lacks finality because it requires the submission of "a summary design report and environmental assessment" which entail consideration of alternatives to the Thames River Outfall. The

alternatives referred to do not relate to the location of the outfall, but to the federal construction grant process. Because the Order does not condition compliance on the results of the environmental assessment undertaken for construction grant purposes, and does not ·call for further consideration of the outfall location, the requirement that studies be performed does not affect the finality of the Order.

■ The Cities also assert that the trial court erred in concluding that their only interest involved funding of the Thames River outfall, not enforcement of the order which the district court viewed as separable subjects. The Cities argument is based on the comprehensive nature of the Clean Water Act. *See Train v. City of New York,* 420 U.S. 35, 95 S.Ct. 839, 43 L.Ed.2d 1 (1975). Nonetheless, the DEP's power to consider modification does not render an otherwise final order not final. *See Califano v. Sanders,* 430 U.S. 99, 108–09, 97 S.Ct. 980, 985–86, 51 L.Ed.2d 192 (1977). Orders and other administrative actions can generally be modified if prescribed procedures are followed. Conn.Gen.Stat. § 22a–436 specifically contemplates that pollution abatement orders may be modified without effecting the finality of the original order. Moreover, all the concerns now raised by the Cities are precisely those before the DEP years ago in the state administrative process. It was there concluded that a discharge into the Thames River would not degrade that river's water quality.

The state proceeding resulted in a final Order entitled to full faith and credit under 28 U.S.C. § 1738, see *United States v. Utah Constr. Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966), which is not now subject to collateral attack in this federal proceeding. *See Califano v. Sanders,* 430 U.S. at 99, 97 S.Ct. at 980; *Sun Enterprises v. Train,* 532 F.2d 280 (2d Cir.1976). In *United States v. ITT Rayonier, Inc.,* 627 F.2d 996, 1001–02 (9th Cir.1980), the court held that the EPA was collaterally estopped from challenging a state court interpretation of an NDPES

permit in an enforcement proceeding in federal court. The court specifically noted that the Act's statutory scheme of concurrent federal and state enforcement powers encourages the application of preclusion rules, in contrast to Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq.* The Cities' may not "bootstrap" themselves into a more advantageous position and—by failing to seek state review of an adverse decision—be allowed to argue that the administrative Order is subject to challenge in federal court, when such attack otherwise would have been precluded. *See Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 469–74, 102 S.Ct. 1883, 1891–94, 72 L.Ed.2d 262 (1982); *Shell Oil Co. v. Train,* 585 F.2d at 414–15.

■ It is, of course, obvious that compliance with an order relating to the discharge of sewage effluent and grant provisions to obtain funding to do that work are entirely different matters. Failure to comply cannot be based on a failure to obtain federal funds. Although the Clean Water Act in Subchapter II (Grants for Contruction of Treatment Works) and Subchapter III (Standards for Enforcement) comprehensively regulates both subjects in the same Act, they are not mutually dependent. *State Water Control Bd. v. Train,* 559 F.2d 921, 924–26 (4th Cir.1977). The funding process is unrelated to the instant suit which concerns enforcement of compliance with effluent standards. Such compliance is not conditioned on the costs of alternatives in the awarding of federal construction grants. A polluter may not excuse compliance claiming its inability to comply is due to the unavailability of federal funds. Because Order No. 964 is final and its terms are not subject to challenge in this enforcement action, appellants claimed interest in opposing the Thames River Outfall does not relate to the subject matter of the suit and is not a "protectible interest" warranting intervention as of right. *See Sierra Club v. U.S. Army Corps of Engineers,* 709 F.2d 175 (2d Cir.1983).

■ Further, the DEP as party plaintiff to enforce Order No. 964 is charged by law to compel the waste disposal system to operate in a manner designed to "conserve and protect the natural resources and environment of Connecticut and protect the public health, safety and welfare." Conn. Gen.Stat. § 22a–416. Absent any evidence of breach of that administrative duty, it is assumed that the DEP protects the Cities' interest in the quality of the Thames River. Moreover, inasmuch as the City of Groton is a subdivision within the Town its interests also appear adequately protected by that municipality. Hence, neither of the Cities' claims underlying their motion to intervene as of right has merit.

### B. *Permissive Intervention*

■ There is a question of whether the cities met the requisite showing of a "question of law or fact in common." Fed.R. Civ.P. 24(b). Regardless of whether such a common question exists, the district court concluded that intervention by the Cities will "unduly delay or prejudice the adjudication of the rights of the original parties." Plaintiff's suit seeks to enforce the Town's compliance with federal and state law embodied in Order No. 964. The Cities concede that the Town of Groton now supports the Thames River outfall route; it is the Cities' opposition that delays its construction. The district court is in the best position to weigh the advantages and disadvantages of intervention. As a consequence, we can see no basis to rule that the district court abused its discretion in denying permissive intervention, particularly when it afforded appellants *amici* status. *United States v. Hooker Chemicals & Plastics,* 749 F.2d 968, 991–93 (2d Cir.1984).

### III  CONCLUSION

Accordingly, the order denying intervention is affirmed.